# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **ACTITECH, LP,** | § | |
| | § | |
| **Debtor-Appellant,** | § | |
| | § | |
| **ACTICHEM, LP,** | § | |
| | § | |
| **Appellant,** | § | |
| | § | |
| **v.** | § | **CASE NO. 3:23-CV-01217-L** |
| | § | |
| **LACORE NUTRACEUTICALS INC.;** | § | |
| **MC-GP LLC, SHERMAN 301A LLC,** | § | |
| **AND SHERMAN 301B LLC,** | § | |
| | § | |
| **Appellees.** | § | |

---

## RESPONSIVE APPEAL BRIEF OF DEBTOR-APPELLANT
## ACTITECH, LP, AND APPELLANT ACTICHEM, LP

---

Christopher J. Schwegmann
  Texas Bar No. 24051315
  cschwegmann@lynnllp.com
David S. Coale
  Texas Bar No. 00787255
  dcoale@lynnllp.com
P. Campbell Sode
  Texas Bar No. 24134507
  csode@lynnllp.com
**Lynn Pinker Hurst & Schwegmann, LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone: (214) 981-3800
Facsimile: (214) 981-3839

Ernest W. Leonard
  Texas Bar No. 12208750
  eleonard@fflawoffice.com
**Friedman & Feiger LLP**
17304 Preston Road, Suite 300
Dallas, Texas 75252
Telephone: (972) 788-1400
Facsimile: (972) 788-2667

**Attorneys for Appellants**
**ActiChem LP and ActiTech LP**

## Table of Contents

Table of Contents ........................................................................................................... i

Table of Authorities ...................................................................................................... ii

Introduction and Roadmap to Decision .................................................................... 1

Issues for Discussion ..................................................................................................... 2

Discussion ........................................................................................................................ 3

    I.      The bankruptcy court clearly erred on the issue of ownership. ................... 5

    II.     The PSA and Bill of Sale are not ambiguous and no record evidence shows that ActiChem had actual or apparent authority to act for ActiTech. ...................................................................................... 8

    III.    The bankruptcy court's fixture and trade fixture analysis is legally defective. ........................................................................................... 13

    IV.    Appellees impeded ActiTech's access to the plant. ..................................... 16

    V.     The bankruptcy court's attorney's fees award is legally erroneous and unsubstantiated by competent evidence. ................................. 17

    VI.    The bankruptcy court did not make a ruling about whether ActiChem breached the PSA in connection with the sale of the Plant. ................................................................................................................ 20

    VII.   The bankruptcy court made no factual findings or conclusions of law about whether ActiChem was ActiTech's agent or alter ego. .............. 21

    VIII.  Appellees make no cognizable arguments in support of their declaratory judgment cross-appeal for removal costs, logistics, and access restrictions after the sale of the Plant. ......................................... 22

Conclusion ..................................................................................................................... 23

Word-Count Certification ........................................................................................... 25

Certificate of Service .................................................................................................... 25

i

# Table of Authorities

## Cases

*Barto v. Shore Constr., L.L.C.*, 801 F.3d 465 (5th Cir. 2015) .................................................... 17

*Burlington N. & Santa Fe R.R. Co. v. Vaughn*, 509 F.3d 1085 (9th Cir. 2007) ....................... 10

*Dupree v. McClanahan*, 1 White & W. 314 (Tex. App. 1877) ................................................... 8

*Eni US Operating Co., Inc. v. Transocean Offshore Deepwater Drilling, Inc.*, 919
    F.3d 931 (5th Cir. 2019) ................................................................................................ 17

*Estate of Neal*, No. 02-16-00381-CV, 2018 WL 283780 (Tex. App.—Fort Worth
    Jan. 4, 2018, no pet.) ................................................................................................ 13, 14

*Fibela v. Wood*, ___ S.W.3d ___, 2023 WL 8699002 (Tex. App.—El Paso 2023, no
    pet.) ................................................................................................................................ 8

*Freeman v. Harleton Oil & Gas, Inc.*, 528 S.W.3d 708 (Tex. App.—Texarkana
    2017, no pet.) ........................................................................................................... 19, 20

*Hartford Life Ins. Co. v. Forman*, Nos. 13-08-00547-CV, 13-08-00603-CV, 2009 WL
    1546924 (Tex. App.—Corpus Christi-Edinburg June 3, 2009, no pet.) .................. 20

*In re Bayer Materialscience, LLC*, 265 S.W.3d 452 (Tex. App.—Houston [1st Dist.]
    2007, no pet.) ............................................................................................................... 20

*In re E. Rio Hondo Water Sply. Corp.*, No. 13-12-00538-CV, 2012 WL 5377898
    (Tex. App.—Corpus Christi-Edinburg, Oct. 29, 2012, no pet.) ............................... 20

*In re Webb*, 954 F.2d 1102 (5th Cir. 1992) ............................................................................ 15

*Inclusive Communities Project, Inc. v. Heartland Community Ass'n, Inc.*, 824 F.
    App'x 210 (5th Cir. Aug. 10, 2020) .......................................................................... 10

*Irani Eng'g, Inc. v. Arcadia Gas Storage, LLC*, No. 01-21-00113-CV, 2022 WL
    3588746 (Tex. App.—Houston [1st Dist.] Aug. 23, 2022, no pet.) ......................... 20

*MCI Telecomm. Corp. v. Tex. Utilities Elec. Co.*, 995 S.W.2d 647 (Tex. 1999) ....................... 19

*Norris v. Thomas*, 215 S.W.3d 851 (Tex. 2007) ...................................................................... 13

*Pacific Energy & Mining Co. v. Fidelity Expl. & Prod. Co.*, No. 01-17-00594-CV, 2018 WL 3543103 (Tex. App.—Houston [14th Dist.] July 24, 2018, no pet.)................................................................................................ 18, 19

*Rollins v. Home Depot USA*, 8 F.4th 393 (5th Cir. 2021)........................................... 15

*Schnell v State Farm Lloyds*, 98 F.4th 150 (5th Cir. 2024) ........................................ 23

*Seger v. Yorkshire Ins. Co., Ltd.*, 503 S.W.3d 388 (Tex. 2016) ................................. 18

*Sharyland Water Sply. Corp. v. City of Alton*, 354 S.W.3d 407 (Tex. 2011)............................ 19

*Steer Wealth Mgmt., LLC v. Denson*, 537 S.W.3d 558 (Tex. App.—Houston [1st Dist.] 2017, no pet.) ........................................................................... 20

*Tawes v. Barnes*, 340 S.W.3d 419 (Tex. 2011)........................................................... 19

*U.S. v. Bramlett*, 191 F. App'x 271 (5th Cir. July 18, 2006).................................... 17

*United Refining Co. v. Dorrion*, 688 F. Supp. 3d 558 (S.D. Tex. 2023) ...................... 15, 17, 22

*United States v. Ramirez*, 557 F.3d 200 (5th Cir. 2009) ........................................... 10

*United States v. Rojas-Alvarez*, 451 F.3d 320 (5th Cir. 2006) .................................... 6

**Introduction and Roadmap to Decision**

Appellees' responsive brief does not help them. In fact, it highlights several key signposts on the roadmap to a necessary decision in favor of ActiChem and ActiTech. This Court should vacate the bankruptcy court's decision and remand for additional proceedings for the reasons stated below.

*__First__*, Appellees possess manufacturing equipment belonging to other entities. Appellees make that point when they argue that Active Organics owns much of the disputed property. Regardless of whether ActiTech or Active Organics owns the manufacturing equipment at issue, it does not belong to Appellees—and they cannot be allowed to unjustly enrich themselves.

*__Second__*, the PSA is not ambiguous. The bankruptcy court clearly erred by using extrinsic evidence to inject ambiguity into the PSA.  And there is no evidence ActiChem had any authority to act for ActiTech.

*__Third__*, the bankruptcy court's (trade) fixture analysis is clearly erroneous because it ignores voluminous record evidence that much of the disputed property is movable and, definitionally, not a fixture. Similarly, the bankruptcy court clearly erred by failing to consider an important aspect of the problem—impeded access to the Plant—when it resolved Appellees' trespassing claim.

*__Fourth__*, The attorney's fees award cannot stand. To start, MC-GP assigned the PSA to Shermans 301-A and 301-B, so MC-GP has *__no right__* to enforce the PSA fee-shifting clause. And LaCore is not a PSA signatory and cannot enforce its fee-shifting provision for lack of clear language to that effect.

1

**Issues for Discussion**

Appellees ask this Court to sustain the bankruptcy court's erroneous final judgment on the following grounds:

- ActiTech does not own any manufacturing equipment at the old Johnson & Johnson plant in Sherman, Texas ("the Plant").[1]

- The ambiguous purchase and sale agreement ("PSA") between ActiChem and Appellees conveyed disputed property to Appellees. And ActiChem had actual and apparent authority to act on behalf of ActiTech.[2]

- The disputed property at the Plant consists of fixtures.[3]

- Appellees did not inhibit access to the Plant when ActiTech attempted to remove its manufacturing equipment.[4]

- The bankruptcy court properly awarded certain Appellees attorney's fees even though they were not signatories to any transaction documents.[5]

Beyond those points, Appellees' cross-appeal urges this Court to resolve three issues not decided by the bankruptcy court:[6]

- Whether ActiChem breached the PSA and Bill of Sale by misrepresenting its authority and not transferring assets to Appellees.

- Whether ActiChem was ActiTech's agent or alter ego.

- Whether ActiChem used ActiTech as a vehicle to defraud Appellees.

---

[1] Appellees' Response 36–40, 42–45.

[2] *Id*. at 40, 46–57.

[3] *Id*. at 57–67.

[4] *Id*. at 68–71.

[5] *Id*. at 71–75.

[6] *Id*. at 76–83.

None of these points are persuasive. This Court should reject Appellees' arguments, vacate the bankruptcy court judgment, and remand this case to the bankruptcy court for further proceedings.

## Discussion

ActiChem and ActiTech respond to Appellees' arguments as follows in seeking the relief requested in their Opening Brief.

_**First**_, Appellees' quibbling over whether ActiTech or Active Organics owned the disputed property is futile. Indeed, this argument highlights the bankruptcy court's basic error of allowing Appellees to unjustly enrich themselves by taking possession of property that clearly does not belong to them.

_**Second**_, Appellees' position before the bankruptcy court was that the PSA is not ambiguous. Their changed position on appeal is not credible. At any rate, the PSA is unambiguous for the reasons set out in the Opening Brief of ActiChem and ActiTech. And any judgment that ActiChem had actual or apparent authority to act on ActiTech's behalf is erroneous because that conclusion depends on a nonexistent evidentiary nexus between David Dunaway and ActiTech.

_**Third**_, Appellees' discussion of fixture and trade fixture issues misses the point. The bankruptcy court ignored record evidence that itemizes movable manufacturing equipment not owned by ActiChem. Appellees' alternative discussion of whether disputed property is necessary to maintenance and operation of the Plant is irrelevant. That issue is forfeited because the bankruptcy court made no relevant fact findings and Appellees did not object to that omission.

*Fourth*, by claiming they did not inhibit ActiTech's access to the Plant, Appellees improperly ask this Court to make fact findings in the first instance. The bankruptcy court made no findings of fact or conclusions of law on this issue—which is inextricably intertwined with the question of whether ActiTech trespassed at the Plant after closing. That failure to consider an important aspect of Appellees' trespassing claim constitutes clear error by the bankruptcy court.

*Fifth*, Appellees' defense of their attorney's fees award fails. They cite no proof that supports the fee award. Worse, Appellees want MC-GP and LaCore to benefit from the PSA fee-shifting clause even though neither entity can enforce the PSA. MC-GP lost the right to enforce the PSA upon assignment to Shermans 301-A and 301-B. And, as a non-signatory, LaCore can enforce the PSA only if the PSA expressly says so. The PSA lacks such clear language, and Appellees cannot overcome that problem by parsing the terms "buyer," "seller," and "parties."

*Sixth*, Appellees cannot now argue that ActiChem breached the PSA and Bill of Sale because it misrepresented its authority to sell assets to Appellees—and failed to transfer unidentified pieces of manufacturing equipment to Appellees. Those issues are forfeited, as shown by the complete lack of relevant findings of fact and conclusions of law in the bankruptcy court judgment.

*Seventh*, similar flaws befall Appellees' point that ActiChem was ActiTech's agent or alter ego such that ActiChem had authority to sell ActiTech's property. That issue is forfeited because the bankruptcy court made no relevant findings of fact or conclusions of law. Nor can Appellees litigate an argument that ActiChem defrauded Appellees in the first instance on appeal.

4

I.    **The bankruptcy court clearly erred on the issue of ownership.**

The bankruptcy court's fundamental error was its finding that ActiChem owned the disputed equipment at the Plant.[7] Appellees' nitpicking of the Opening Brief filed by ActiChem and ActiTech changes nothing whatsoever.[8] The necessary implication of the bankruptcy court's statement that "Plaintiffs failed to introduce sufficient evidence to show that the property in question was owned by ActiTech, **_not Acti[C]hem_**" is that ActiChem owns the disputed property.[9]

That finding is clearly erroneous because it ignores extensive record evidence that ActiChem does not own the disputed equipment. Such evidence includes: (1) an itemized list of assets that an entity **_other than_** ActiChem acquired at an October 5, 2004, Johnson and Johnson close-out auction;[10] (2) documentation of ActiTech's purchase of seven Clark Equipment Company forklifts;[11] (3) financial records showing that ActiTech owned and paid taxes on over $4 million in fixed assets as of December 31, 2019;[12] (4) ActiTech's itemized depreciation and amortization report in its 2019 tax filings;[13] (5) ActiTech's responses to Appellees' second and sixth interrogatories—which identify specific lots of the Rosen Report and other items as owned by ActiTech;[14] and (6) the Rosen Report, as reconciled against the list of items purchased at the Johnson & Johnson auction and ActiTech's interrogatory responses.[15]

---

[7] 5-1ER136–37.

[8] Appellees' Response 37.

[9] 5-1ER136–37 (emphasis added).

[10] 6-5ER7245, 7253–54, 6-10ER8359–71.

[11] 6-3ER6651–53, 6655–57.

[12] 6-6ER7276 (balance sheet); *see* 5-7ER1357–64 (book of assets); 6-10ER8349–58 (tax records).

[13] 16-1SER8554–65, 8571–73.

[14] 16-1ER8659–61.

[15] 5-2ER389–404; 6-7ER755, 7563-7754 & 6-8ER7755-7771.

In contrast, the record contains no documentary or testimonial evidence that ActiChem owns the disputed manufacturing equipment. Nor did Appellees cite to any such evidence in their brief.[16] The bankruptcy court in fact cited nothing to support its decision that ActiChem owned millions of dollars in manufacturing equipment it could sell to Appellees, other than its own bare surmise based on evidence about ActiTech's business operations.[17] That impermissible speculation[18] harmed ActiTech by depriving it of valuable equipment at the Plant, and this Court should vacate the bankruptcy court's erroneous judgment. Appellees admit as much when they stipulate that "the [bankruptcy] court could only speculate as to whether any item of Disputed Property was owned by . . . ActiChem" or another entity.[19]

Appellees try to sidestep the problems with the bankruptcy court judgment through an argument that Active Organics—the limited partner of ActiTech—bought the property at the Johnson & Johnson auction.[20] But that contention does not help Appellees at all. The overarching point in this appeal is that there is no evidence that ActiChem owned any of the disputed property. And ActiChem could not sell property that it did not own to Appellees—regardless of whether the property at issue belonged to Active Organics, ActiTech, or a different "ActiCompany." The bankruptcy court's contrary conclusion is clearly erroneous because it awarded Appellees ownership of property that belongs to other entities.

---

[16] *See generally* Appellees' Response 36–40, 42–45.

[17] 5-1ER136–37.

[18] *See United States v. Rojas-Alvarez*, 451 F.3d 320, 333–34 (5th Cir. 2006) ("A verdict may not rest on mere suspicion, speculation, or conjecture, or on an overly attenuated piling of inference on inference." (cleaned up)).

[19] Appellees' Response 39, 42–43.

[20] *Id.*

Next, Appellees pivot to an alternative argument that ActiChem and ActiTech did not identify disputed property not owned—or transferable—by ActiChem.[21] Not so. Such property is itemized in: (1) the list of assets acquired from Johnson & Johnson;[22] (2) documentation of forklifts acquired by ActiTech;[23] (3) ActiTech's itemized depreciation and amortization report included in its 2019 tax filings;[24] and (4) ActiTech's responses to Appellees' second interrogatory.[25]

That itemized evidence highlights the basic problem with the bankruptcy court's ruling. Record evidence detailed disputed property ***not*** owned by ActiChem. Instead of considering that probative evidence, the bankruptcy court made a blanket ruling that ActiChem owned all the disputed property. That blanket ruling is purely speculative because it is based on nothing but the bankruptcy court's own surmise about ActiChem operations. Such speculation is clear error.

Rather, the bankruptcy court should have reconciled documentation of items owned by the respective entities—*i.e.*, the list of assets acquired during the Johnson & Johnson auction and receipts submitted by Appellees—against the Rosen Report and allocated the disputed equipment and allocated that equipment accordingly. It appears that the bankruptcy court forewent that analysis given the high volume of disputed equipment.[26] But the volume of property at issue is not a valid reason to forego careful examination of property ownership questions.

---

[21] *Id*. at 43–45.

[22] 6-10ER8359–71.

[23] 6-3ER6651–53, 6655–57.

[24] 16-1SER8554–65. 8571–73.

[25] 16-1ER8659–61.

[26] *E.g.* 5-1ER139 ("It is impractical, to say the least, for this Court to address every single one of the hundreds of items of Disputed Property.").

II.     **The PSA and Bill of Sale are not ambiguous and no record evidence shows that ActiChem had actual or apparent authority to act for ActiTech.**

Apart from their ownership arguments, Appellees argue that the PSA is ambiguous for various reasons.[27] ActiChem and ActiTech disagree with Appellees for the reasons set out in the Opening Brief.[28] ActiChem and ActiTech only add that the lack of definitions for certain terms—including fixture, improvement, attachment, maintenance, and operations—cannot create ambiguity.[29] Those terms have well-established legal or ordinary meanings such that they do not establish ambiguity in contract language. Because the PSA and transaction documents are not ambiguous, the bankruptcy court improperly relied on extrinsic evidence to interpret those contracts. And Appellees' points about rewriting the PSA[30] ignores the ancient legal proposition that an entity cannot sell property it does not own by suggesting that ActiChem could sell equipment belonging to other entities.[31]

Perhaps sensing the dispositive effect of the rule that an entity cannot sell something that it does not own, Appellees take the position that ActiChem had actual or apparent authority to sell the Disputed Property on behalf of ActiTech.[32] But that analysis does not help Appellees for at least two reasons, so this Court should reject all arguments about actual or apparent authority.

---

[27] Appellees' Response 40, 46–56.
[28] Appellants' Opening Brief 13–17.
[29] Appellees' Response 48.
[30] *Id*. at 54–56.
[31] *See Dupree v. McClanahan*, 1 White & W. 314, 315 (Tex. App. 1877) ("To be able to sell property, [the seller] must have a vested right in it at the time of the sale."); *Fibela v. Wood*, ___ S.W.3d ___, 2023 WL 8699002, at *4 (Tex. App.—El Paso 2023, no pet.) ("[A]s a matter of law, one does not have a right to sell what she does not own." (citations omitted)).
[32] Appellees' Response 46, 51, 56.

*First*, Appellees take contradictory positions in their briefing. In response to the lack of ownership argument raised ActiChem and ActiTech, Appellees claim Active Organics owns the disputed property. But the necessary implication of Appellees' points about ActiChem having actual or apparent authority to act on behalf of ActiTech is that ActiTech owns the disputed property. ActiChem's actual or apparent authority to act for ActiTech would otherwise mean nothing at all in the context of the disputed property. Put differently, ActiChem's actual or apparent authority to act on behalf of ActiTech matters only if ActiTech owns the disputed property. That issue is irrelevant if Active Organics owns the disputed property. Appellees cannot stake out contradictory positions when convenient to their arguments.

*Second*, the phrase "actual and apparent authority" appears in the bankruptcy court's reasoned decision just one time.[33] Here, the bankruptcy court concluded that Keller Williams broker David Dunaway had authority to act on ActiChem's behalf. The bankruptcy court then engaged in flawed logical reasoning when it equated Dunaway's purported authority to act for ActiChem with ActiChem's actual or apparent authority to act on behalf of ActiTech. That is a false equivalence because Dunaway's authority to act for ActiChem is not the same thing as ActiChem's authority to act for ActiTech. Even worse, neither Appellees nor the bankruptcy court identified an evidentiary nexus between Dunaway and ActiTech or Active Organics. Links between Dunaway and ActiChem are insufficient to make such a showing. As a result, improper and reversible speculation informed the bankruptcy court's conclusion that ActiChem had authority to act on behalf of ActiTech and sell its property.

---

[33] 5-1ER142.

To camouflage that insurmountable problem with the bankruptcy court's actual or apparent authority analysis, Appellees repeatedly say that ActiChem and ActiTech did not challenge the actual or apparent authority issue on appeal.[34] Here, Appellees are insinuating that ActiChem and ActiTech cannot address actual and apparent authority before this Court. But that suggestion by Appellees fails because they misunderstand well-established appellate briefing principles.

It is certainly true that, pursuant to general Fifth Circuit briefing practices, the "appellant's original brief abandons all points not mentioned therein."[35] But the Fifth Circuit "view[s] the situation differently when, as in this instance, a new issue is raised in the appellee's brief and the appellant responds in his reply brief."[36] The Fifth Circuit will "exercise[ its] discretion to address an issue's merits under such circumstances."[37] The relevant rule is therefore that, "if the appellee raises an issue in its answering brief, the issue is joined and the court may consider it" when it disposes of an appeal on the substantive merits.[38]

Throughout their brief, Appellees spend more than five pages arguing that ActiChem had actual and apparent authority to act on behalf of ActiTech in connection with the Plant sale.[39] Under Fifth Circuit law, ActiChem and ActiTech are entitled to respond to this exposition of Appellees.

---

[34] *See* Appellees' Response 18, 40, 46, 51.

[35] *Inclusive Communities Project, Inc. v. Heartland Community Ass'n, Inc.*, 824 F. App'x 210, 218 (5th Cir. Aug. 10, 2020) (cleaned up)).

[36] *Id.*; *see also United States v. Ramirez*, 557 F.3d 200, 203 (5th Cir. 2009).

[37] *Id.*

[38] *Ramirez*, 557 F.3d at 203 (citing, *inter alia*, *Burlington N. & Santa Fe R.R. Co. v. Vaughn*, 509 F.3d 1085, 1093 (9th Cir. 2007)).

[39] Appellees' Response 78–83.

Appellees know that their actual and apparent authority argument is mistaken. That is why they mischaracterize the trial testimony of Elysiann Bishop—the owner of ActiChem and ActiTech. Appellees claim that "Bishop testified that ActiTech's property *actually* was conveyed as part of the sale."[40] That representation of Bishop's testimony is wrong. The below excerpts from trial transcripts cited by Appellees show that Bishop testified that ActiTech's property was __*not*__ sold.

> Q:   Okay. You notice that the seller is on Page 1 is ActiChem, LP. Do you see that?
> A:   Yes. Yes. Yes.
> Q:   Was it your intent to sell any property owned by ActiTech or any other company under this agreement?
> A:   __No__, except for one item.
> Q:   Which was?
> A:   A water treatment.
> Q:   Water treatment?
> A:   And when I say that, it's actually to the water treatment and a set of tanks that's behind it.[41]
>
>                 *       *       *
>
> Q:   All right. It's your contention in this lawsuit as a representative of ActiTech LP that none of its equipment or fixtures were conveyed as part of the sale of the Sherman facility, right?
> A:   ___The equipment was not conveyed___. [] Everything was not going with the sale except for the water treatment and the large tanks that go with it that came in on the railway. And then they sealed it up which is those 30,000 gallon tanks. And that's specified.
> Q:   And those tanks were in fact—those water filtration system—
> A:   Holding tanks.
> Q:   —and tanks were in fact owned by ActiTech, right?
> A:   I believe so, yes.[42]
>
>                 *       *       *

---

[40] *Id*. at 18 (citing 5-4ER797 (65:9–20); 5-5ER1105–18 (157:11–170:21)), 40, 82.
[41] 5-4ER797 (65:9–19 (emphasis added)).
[42] 5-5ER1105–06 (157:11–158:1 (emphasis added)).

At most, Bishop testified that she got ActiTech assets as part of her divorce from Michael Bishop, and that she had the ***ability*** to sell ActiTech property. The ability to sell is not the same thing as actually selling. Appellees' contrary claims must be rejected as inconsistent with Elysiann Bishop's testimony:

> Q:   So is it your testimony that ActiChem had ***the ability*** to sell ActiTech property as part of the sale of the Sherman facility?
>
> A:   I believe when we were discussing the sale of . . . the property and the access for the businesses, it was conveyed that I owned all of the related entities and the process it would be. And the buyer at the time was a much more understanding buyer.
>
> Q:   So you had ***the ability*** on behalf of both entities, ActiTech and ActiChem, to sell both the real estate and the equipment in the facility, right?
>
> A:   Yes.[43]

*      *      *

> Q:   Thank you. That tank in Lot 50 is ActiTech property, right?
>
> A:   Well, I believe that we purchased it at the auction. And Rosen put a number on it. And yes, it would be one of the many assets I was awarded in divorce.
>
> Q:   That lot, or the tank in Lot 50 was actually conveyed in the sale too, wasn't it?
>
> A:   ***I don't believe so***.[44]

Because the trial testimony referenced by Appellees does not show that ActiTech sold all of its disputed manufacturing equipment to Appellees, they cannot prevail on the theory of a wholesale conveyance by Elysiann Bishop.[45] The inescapable truth is that ActiTech did not sell the disputed property.

---

[43] 5-5ER1106–07 (158:15–159:1 (emphasis added)).
[44] 5-5ER1116–17 (168:24–169:6 (emphasis added)).
[45] Appellees' Response 18, 40, 82.

### III.    The bankruptcy court's fixture and trade fixture analysis is legally defective.

Appellees' discussion of property allegedly affixed to the Plant[46] wholly misses the point about the bankruptcy court's fixture and trade fixture analysis that ActiChem and ActiTech made in their Opening Brief.

The fundamental error made by the bankruptcy court was its decision to ignore photographic evidence that much of the disputed equipment is readily movable such that it cannot constitute fixtures or trade fixtures. Crucially, the Texas Supreme Court has expressly explained that "[m]ovable chattels do not possess the characteristics of a fixture attached to real property and do not acquire the character of realty."[47] In any event, "personal property retains its character when it is attached to realty but does not become a permanent part of the realty."[48]

Instead of considering the items of disputed property on an individual basis, the bankruptcy court made another improper blanket ruling—as it did when disposing of the property ownership issues discussed above—that the disputed property consists of fixtures attached to the Plant. That is clear from its remark that "Plaintiffs failed to meet their burden to establish the Disputed Property is not fixtures. It is impractical, to say the least, for the court to address every single one of the hundreds of items of Disputed Property."[49] Given the photographic evidence in the record, that blanket fixture ruling is clearly erroneous and must be vacated on appeal.

---

[46] *Id.* at 59–63.

[47] *Norris v. Thomas*, 215 S.W.3d 851, 857 (Tex. 2007).

[48] *Estate of Neal*, No. 02-16-00381-CV, 2018 WL 283780, at *6 (Tex. App.—Fort Worth Jan. 4, 2018, no pet.).

[49] 5-1ER139–40.

Appellees try to sidestep the record evidence of movable equipment by claiming much of the property was installed by Johnson & Johnson, and ActiChem and ActiTech failed to specifically identify the disputed equipment at issue in the bankruptcy court.[50] Appellees are plainly incorrect on both counts.

_**First**_, Appellees overlook the logical implications of the Johnson & Johnson auction. Johnson & Johnson would not have sold Plant equipment unless it could be removed without damaging the Plant.  The list of items bought from Johnson & Johnson implicates the principle that "personal property retains its character when it is attached to realty but does not become a permanent part of the realty."[51] The bankruptcy court clearly erred by misapplying that law.

_**Second**_, ActiChem and ActiTech specifically identified the disputed equipment for the bankruptcy court in at least four places: (1) the list of assets that were acquired at the Johnson & Johnson auction;[52] (2) documentation reflecting ActiTech's purchase of seven Clark Equipment Company forklifts;[53] (3) ActiTech's itemized depreciation and amortization report in its 2019 tax filings;[54] and (4) their response to Appellees' second interrogatory, which clearly detailed the Rosen Report lots that ActiChem and ActiTech viewed as their removable trade fixtures.[55] Despite this specific itemization of disputed property, the bankruptcy court committed reversible error by treating the equipment at issue as an undifferentiated monolith.

---

[50] Appellees' Response 64, 65–66.
[51] _Estate of Neal_, 2018 WL 283780, at *6.
[52] 6-10ER8359–71.
[53] 6-3ER6651–53, 6655–57.
[54] 16-1SER8554–65. 8571–73.
[55] 16-1ER8659–61.

Setting aside the foregoing arguments, Appellees claim the disputed property "include[s] necessary equipment for the maintenance and operation of the" Plant.[56] The problem with this reasoning is that the bankruptcy court made **_zero_** findings of fact or conclusions of law that equipment was necessary for the maintenance and operation of the Plant. That issue is forfeited on appeal, so Appellees cannot raise it for the first time in this Court—or ask this Court for a ruling in the first instance. Ultimately, "[a] district court functions as an appellate court when reviewing the decision of a bankruptcy court as to a core proceeding, and so applies the same standard of review as would a federal appellate court."[57] There is "a procedural problem" with Appellees' "maintenance and operation" argument because "[t]he bankruptcy court doesn't appear to have addressed it, and indeed, there's no clear indication that [any Appellee] even raised it. Typically, failure to brief an argument below results in forfeiture of the argument on appeal."[58] Maintenance and operation is a non-starter.

Appellees end their incorrect fixture and trade fixture argument by quibbling with the proposal ActiChem and ActiTech put forward for proceedings on remand.[59] In doing so, Appellees accuse ActiChem and ActiTech of planning to offer new evidence and futilely rely on existing documents. Those suggestions are mistaken and must be rejected. On remand, the bankruptcy court need only reconcile two sets of documents against the Rosen Report to identify manufacturing equipment owned by each entity: (1) for ActiTech and the other "ActiCompanies," the list of assets acquired during the

---

[56] Appellees' Response 64.

[57] *United Refining Co. v. Dorrion*, 688 F. Supp. 3d 558, 562 (S.D. Tex. 2023) (citing *In re Webb*, 954 F.2d 1102, 1103–04 (5th Cir. 1992)).

[58] *Id.* at 565 (citing, *inter alia, Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021)).

[59] Appellees' Response 66–67.

Johnson & Johnson auction, ActiTech's documented ownership of certain forklifts, and ActiTech's 2019 depreciation report; and (2) for Appellees, the receipts and other papers offered to show Appellees' ownership of manufacturing equipment at the Plant. After that reconciliation, the bankruptcy court will be able to determine the ownership of any remaining Rosen Report lots using traditional fixture and trade fixture principles. That is what the bankruptcy court should have done in the first instance, and its failure to do so constitutes reversible error. The result of the bankruptcy court's analysis is Appellees now possess manufacturing equipment and property that they do not own. Such unjust enrichment of Appellees requires vacatur.

## IV.    Appellees impeded ActiTech's access to the plant.

Regarding trespassing, Appellees defend that erroneous judgment by arguing that ActiChem and ActiTech "have no evidence that the [bankruptcy court] did not analyze" their contentions that Appellees impeded access to the Plant.[60] Not so.  The bankruptcy court's judgment says nothing about whether Appellees limited access to the Plant such that ActiChem and ActiTech could not timely collect their manufacturing equipment. That is all the "evidence" required to show that the bankruptcy court failed to consider a key aspect of the trespassing claim asserted by Appellees. No trespassing judgment can lie against ActiChem and ActiTech if Appellees restricted their access to the Plant such that they could not recover their equipment. Vacatur is required because the bankruptcy court's refusal to consider impeded access produces a "definite and firm conviction that a mistake has been committed."[61]

---

[60] *Id*. at 68.
[61] *Barto v. Shore Constr., L.L.C.*, 801 F.3d 465, 471 (5th Cir. 2015) (citation omitted).

Appellees' related argument that they did not impede access of ActiChem and ActiTech to the Plant is misplaced.[62] Because this Court functions as a federal appellate court when it reviews bankruptcy court proceedings,[63] it cannot make factual findings in the first instance. But that is exactly what Appellees want this Court to do—make a brand-new factual finding that Appellees gave ActiChem and ActiTech adequate access to the Plant after it was sold. "It is the [bankruptcy] court—which heard all the evidence and is most familiar with the case—that should make the [limited Plant access] factual findings in the first instance."[64] If Appellees want to litigate the unresolved question of whether ActiChem and ActiTech had sufficient Plant access to remove their equipment, Appellees can only do so on remand.[65]

## V.    The bankruptcy court's attorney's fees award is legally erroneous and unsubstantiated by competent evidence.

Beyond the above arguments, Appellees futilely defend[66] the bankruptcy court's erroneous decision to award Appellees $475,762.50 in attorney's fees.[67] That fee award is unsustainable for three reasons.

*First*, Appellees cite no evidentiary basis for the amount awarded.

*Second*, Appellees take the irreconcilable position that MC-GP, Sherman 301-A, and Sherman 301-B can all enforce the PSA even though MC-GP assigned its rights in

---

[62] Appellees' Response 68–72.

[63] *See United Refining*, 688 F. Supp. 3d at 562, 565.

[64] *Eni US Operating Co., Inc. v. Transocean Offshore Deepwater Drilling, Inc.*, 919 F.3d 931, 937 (5th Cir. 2019); *accord U.S. v. Bramlett*, 191 F. App'x 271, 272 (5th Cir. July 18, 2006) ("The district court has made no factual findings with regard to this issue. This court should not make that factual assessment in the first instance." (citation omitted)).

[65] *See Eni*, 919 F.3d at 937.

[66] Appellees' Response 72–75.

[67] 5-1ER112.

the PSA to Sherman 301-A and 301-B.[68] If Appellees are correct about this assignment, MC-GP cannot enforce the PSA—or its fee-shifting provision. Under basic assignment law, "an assignee stands in the shoes of [the] assignor,"[69] so, "[f]ollowing an unqualified assignment, the assignor loses all rights to enforce the contract."[70] And MC-GP made an unqualified assignment of the PSA to Sherman 301-A and Sherman 301-B, as shown by their assignment and assumption agreement:[71]

**ASSIGNMENT AND ASSUMPTION**
**OF PURCHASE AND SALE AGREEMENT**

This ASSIGNMENT AND ASSUMPTION OF PURCHASE AND SALE AGREEMENT (this "**Assignment**") is made by and between MC-GP, LLC a Texas limited liability company ("**Assignor**") and SHERMAN 301-A, LLC ("**301-A**"), as to a 52.63% undivided interest, and SHERMAN 301-B, LLC ("**301-B**") as to a 47.37% undivided interest. 301-A and 301-B shall collectively be referred to herein as "**Assignee**."

**RECITALS**

A.    Assignor, as purchaser, and Actichem, L.P., a Texas limited partnership ("**Seller**"), have entered into that certain Purchase and Sale Agreement dated June 9, 2021 (the "**Agreement**") pursuant to which Assignor is purchasing from Seller that certain real property and improvements thereon commonly known as 301 W. FM Highway 1417, Sherman, Texas 75090 (the "**Property**");

B.    Assignor desires to assign all of its right, title and interest in and to the Agreement to Assignee, and Assignee desires to accept such assignment according to the terms set forth below.

Because MC-GP made an unqualified assignment of the PSA to Sherman 301-A and Sherman 301-B, MC-GP cannot enforce the PSA or its fee-shifting provision.[72] The bankruptcy court committed a legal error when it awarded MC-GP attorney's fees. That error requires vacatur of the judgment below.

---

[68] Appellees' Response 14, 72.

[69] *Seger v. Yorkshire Ins. Co., Ltd.*, 503 S.W.3d 388, 406 (Tex. 2016) (citation omitted).

[70] *Pacific Energy & Mining Co. v. Fidelity Expl. & Prod. Co.*, No. 01-17-00594-CV, 2018 WL 3543103, at *4 (Tex. App.—Houston [14th Dist.] July 24, 2018, no pet.) (citation omitted).

[71] 6-8ER7845–46.

[72] *Pacific Energy*, 2018 WL 3543103, at *4.

***Third***, Appellees incorrectly posit that LaCore can benefit the PSA fee-shifting provision even though it is not a signatory.[73] Texas Supreme Court precedent states that "incidental beneficiaries have no enforceable rights,"[74] so, as a non-signatory, LaCore can benefit from the PSA and its attorney's fee-shifting clause only if it is an intended third party beneficiary of the PSA.[75]

"In determining whether a third party can enforce a contract, the intention of the contracting parties is controlling."[76] Any "intention to contract or confer a direct benefit to a third party must be clearly and fully spelled out, or enforcement by the third party must be denied."[77] The "right of a third party to enforce the contract should not rest on implication, but should be clearly apparent, and any doubt should be resolved against such intent."[78] Texas law does not lightly ascribe intent to confer contractual benefits on third parties. The presumption is that the signatories contracted only for themselves absent express language to the contrary.[79]

Appellees identify no clear language in the PSA—or any other transaction documents—authorizing LaCore to enforce the fee-shifting provision. Their quibbling about contractual omissions and parsing of the terms "seller," "purchaser," and "party" falls well short of the requirement to identify clear language evidencing an intent to vest enforceable rights in a PSA non-signatory.

---

[73] Appellees' Response 73–75.

[74] *MCI Telecomm. Corp. v. Tex. Utilities Elec. Co.*, 995 S.W.2d 647, 652 (Tex. 1999) (citation omitted).

[75] *Freeman v. Harleton Oil & Gas, Inc.*, 528 S.W.3d 708, 744–45 (Tex. App.—Texarkana 2017, no pet.) (citing, *inter alia*, *Sharyland Water Sply. Corp. v. City of Alton*, 354 S.W.3d 407, 421 (Tex. 2011); *Tawes v. Barnes*, 340 S.W.3d 419, 425 (Tex. 2011)).

[76] *Id.* at 745 (citation omitted).

[77] *Id.* (citation omitted).

[78] *Id.* at 746 (cleaned up).

[79] *Id.* at 745.

Because the PSA omits clear language to the effect that LaCore can enforce its attorney's fee-shifting provision, the bankruptcy court committed a reversible error of law when it awarded LaCore attorney's fees. This Court must remedy that mistake by vacating the bankruptcy court's fee award and remanding the issue of attorney's fees to the bankruptcy court for reconsideration. Such a ruling would neatly dovetail with binding Texas Supreme Court precedent and a significant body of Texas intermediate appellate court caselaw.[80] ActiChem and ActiTech cannot be punished for this legal error committed by the bankruptcy court.

## VI.    The bankruptcy court did not make a ruling about whether ActiChem breached the PSA in connection with the sale of the Plant.

Unsatisfied with their response to the appeal of ActiChem and ActiTech, Appellees contend on cross-appeal that ActiChem breached the PSA because: (1) "it did not have the full right, power, and authority to consummate the purchase and sale transaction provided for in the PSA;" (2) "certain Personal Property and Real Property was not transferred to the PSA;" and (3) "ActiChem was not transferred pursuant to the PSA."[81] Appellees further submit virtually identical arguments that ActiChem breached the Bill of Sale that accompanied the PSA.[82]

---

[80] *See, e.g., Freeman*, 528 S.W.3d at 746–47 (explaining that a non-signatory could not enforce a contractual attorney's fee-shifting clause because the contract did not contain clear language evidencing an intent of the signatories to vest such enforcement rights in the non-signatory); *accord Irani Eng'g, Inc. v. Arcadia Gas Storage, LLC*, No. 01-21-00113-CV, 2022 WL 3588746, at *8 (Tex. App.—Houston [1st Dist.] Aug. 23, 2022, no pet.); *Steer Wealth Mgmt., LLC v. Denson*, 537 S.W.3d 558, 567–68 (Tex. App.—Houston [1st Dist.] 2017, no pet.); *In re E. Rio Hondo Water Sply. Corp.*, No. 13-12-00538-CV, 2012 WL 5377898, at *7 (Tex. App.—Corpus Christi-Edinburg, Oct. 29, 2012, no pet.); *Hartford Life Ins. Co. v. Forman*, Nos. 13-08-00547-CV, 13-08-00603-CV, 2009 WL 1546924, at *6 (Tex. App.—Corpus Christi-Edinburg June 3, 2009, no pet.); *In re Bayer Materialscience, LLC*, 265 S.W.3d 452, 458 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

[81] Appellees' Response 76–77.

[82] *Id.* at 77–78.

20

But the bankruptcy court never ruled on those points. That fundamental defect with Appellees' cross-appeal is obvious from the bankruptcy court's findings of fact and conclusions of law.[83] Those omissions by the bankruptcy court make perfect sense because the ***only*** breach of contract theory actually resolved during bankruptcy court proceedings was that ActiChem and ActiTech breached the PSA and Temporary Access Agreement by failing timely to remove property from the Plant after closing.[84] Removal of items is simply not the same thing as authority to execute a transaction or contractual obligations to transfer assets. Appellees tellingly did not cite anything in the bankruptcy court's judgment evidencing a ruling on whether ActiChem breached the PSA or Bill of Sale due to lack of authority or failure to convey property to Appellees. Even worse, Appellees neglected to identify specific pieces of disputed equipment that ActiChem purportedly had a contractual obligation to convey to Appellees. Nor do they reference any clause or term in the PSA or Bill of Sale that requires ActiChem to convey itself to Appellees.[85] Because Appellees improperly ask this Court to resolve fact-bound issues in the first instance, their cross-appeal points about breach of contract must be rejected as unavailable on appeal to this Court.[86]

## VII.    The bankruptcy court made no factual findings or conclusions of law about whether ActiChem was ActiTech's agent or alter ego.

Apart from their breach of contract cross-appeal, Appellees also cross-appeal on the basis that ActiChem was ActiTech's agent and alter ego, and that ActiChem used

---

[83] *See generally* 5-1ER117–45.
[84] 5-1ER120, 143–44.
[85] *See id*.
[86] *See United Refining*, 688 F. Supp. 3d at 562, 565.

ActiTech to perpetrate a fraud on Appellees.[87] Once again, the fundamental problem with Appellees' cross-appeal points is that they were not resolved by the bankruptcy court. The words "agent," "alter ego," and "fraud" are in fact entirely absent from the bankruptcy court's findings of fact, conclusion of law, and final judgment, as shown by the search functionality available in PDF software.[88] As an appellate court in connection with bankruptcy proceedings, this Court cannot resolve fact-intensive issues—such as the existence of an agency relationship, whether one entity is an alter ego of another, or the commission of fraud—in the first instance. Appellees may not sidestep elementary procedural rules and seek from this Court rulings that fall within the exclusive purview of the bankruptcy court.[89] This Court should deny Appellees' cross-appeal on the novel issues of agency, alter ego, and fraud.

### VIII.  Appellees make no cognizable arguments in support of their declaratory judgment cross-appeal for removal costs, logistics, and access restrictions after the sale of the Plant.

In concluding their cross-appeal, Appellees ask this Court to revisit their declaratory judgment claim for removal costs, logistics, and access restrictions.[90] But Appellees offer no citations to the record or legal authorities in briefing this issue. That omission is fatal to Appellees because "[a] party may forfeit an argument through inadequate briefing in several ways, such as by failing to offer any citation to authority or by failing to offer record citations."[91]

---

[87] Appellees' Response 78–83.
[88] *See generally* 5-1ER114–45
[89] *See United Refining*, 688 F. Supp. 3d at 562, 565.
[90] Appellees' Response 83.
[91] *Schnell v State Farm Lloyds*, 98 F.4th 150, 161 (5th Cir. 2024) (cleaned up).

**Conclusion**

For the foregoing reasons, ActiChem and ActiTech ask this Court to vacate the bankruptcy court's erroneous final judgment and remand this case for reconsideration of the claims asserted by all parties. ActiChem and ActiTech also seek all other relief to which they may justly be entitled consistent with such disposition, including vacatur of the bankruptcy court's award of attorney's fees.

Dated: July 3, 2024                    Respectfully submitted,

                                       /s/ Christopher J. Schwegmann
                                       Christopher J. Schwegmann
                                         Texas Bar No. 24051315
                                         cschwegmann@lynnllp.com
                                       David S. Coale
                                         Texas Bar No. 00787255
                                         dcoale@lynnllp.com
                                       P. Campbell Sode
                                         Texas Bar No. 24134507
                                         csode@lynnllp.com
                                       **Lynn Pinker Hurst & Schwegmann, LLP**
                                       2100 Ross Avenue, Suite 2700
                                       Dallas, Texas 75201
                                       Telephone: (214) 981-3800
                                       Facsimile: (214) 981-3839

                                       Ernest W. Leonard
                                         Texas Bar No. 12208750
                                         eleonard@fflawoffice.com
                                       **Friedman & Feiger LLP**
                                       17304 Preston Road, Suite 300
                                       Dallas, Texas 75252
                                       Telephone: (972) 788-1400
                                       Facsimile: (972) 788-2667

                                       **Attorneys for Appellants**
                                       **ActiChem LP and ActiTech LP**

**Word-Count Certification**

As directed by Federal Rule of Bankruptcy Procedure 8015(a)(7)(B)(ii), the undersigned certifies that this Responsive Brief contains 6,161 words as measured by the word count of the word-processing software used to prepare the document, inclusive of all words contained in the screenshots and other images enclosed in this brief.  The undersigned further notes that, under Federal Rule of Bankruptcy Procedure 8015(a)(7)(A), no word-count certification is required for Appellants' Opening Brief because it is less than thirty pages in length.

<em>/s/ Christopher J. Schwegmann</em><br>Christopher J. Schwegmann

**Certificate of Service**

The undersigned certifies that a true and correct copy of the foregoing document was served on all counsel of record in accordance with the Federal Rules of Civil Procedure on July 3, 2024.

<em>/s/ Christopher J. Schwegmann</em><br>Christopher J. Schwegmann